**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CATHERINE M. OSANTOWSKI,**

                **Plaintiff,**               **CIVIL ACTION NO. 9-CV-10185**

      **vs.**                    **DISTRICT JUDGE JULIAN ABELE COOK**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

              **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Defendant's Motion for Summary Judgment (docket no. 17) be GRANTED, that Plaintiff's Motion for Summary Judgment (docket no. 14) be DENIED, and the instant complaint DISMISSED as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

\*\*\*

**II.**    **PROCEDURAL BACKGROUND**

      Plaintiff filed an application for disability, Disability Insurance Benefits and Supplemental Security Income on June 28, 2001, alleging that she had been disabled and unable to work since January 10, 2000 due to fibromyalgia, pancreatitis, varicose veins, kidney problems, migraine headaches, sleep apnea, high cholesterol and a weak immune system. (TR 28-31, 33-43, 50). The Social Security Administration initially denied her claim. Following an April 6, 2005 hearing, Administrative Law Judge Don A. Harper denied Plaintiff's claim in a decision dated April 25, 2005 by finding at step two that Plaintiff had engaged in substantial gainful activity. (TR 228-33). The Appeals Council granted Plaintiff's Request for Review and remanded the case on February 27,

1

2007 for clarification of Plaintiff's alleged onset date, evaluation of Plaintiff's work activity under the self employment evaluation guidelines set forth in 20 C.F.R. § 404.1575, and a continuation of the sequential evaluation process of 20 C.F.R. §§ 404.1520 and 416.920 should the ALJ conclude that Plaintiff's work activity did not constitute substantial gainful activity. (TR 243). On remand, Administrative Law Judge James N. Gramenos (ALJ) held a hearing on November 27, 2007 and denied Plaintiff's claim in a second decision, dated July 25, 2008. (TR 17-27). The Appeals Council declined to review Judge Gramenos's decision. (TR 7-9). Plaintiff commenced the instant action for judicial review. The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony and Reports

Plaintiff was forty-two years old at the time of the most recent administrative hearing. (TR 28, 382). Plaintiff has a high school education and past work experience as a grocery store stocker, bookkeeper/dispatcher, gas station cashier, meat wrapper and fast food restaurant manager. (TR 51, 56, 60, 336). Plaintiff testified that she cannot work due to severe pain and fatigue as a result of her conditions. (TR 392).

Plaintiff testified that she has pain in the back of her head and throughout her body, made worse by the weather and stress. (TR 415). Medication does not resolve the pain. (TR 415). Plaintiff testified that she gets migraine headaches almost every day. (TR 416). The headaches make her nauseous and make her eyes hurt and about three to five days per week she goes to bed for four to eight hours to relieve the pain. (TR 416-17). She testified that her legs and hands swell as soon as she wakes up in the morning and starts moving around. (TR 417).

Plaintiff testified that she has depression for which she takes medication. (TR 420). Plaintiff testified that she is allergic to 150 things and that she has that information as the result of a "back test." (TR 398). Plaintiff also testified that she has pancreatitis, asthma, sleep apnea, kidney failure resulting from damage to her kidney while having kidney stones "blasted," and fibromyalgia. (TR 393-95).

Plaintiff lives in a two story home with her two school-aged children and her bedroom is on the second floor. (TR 423). Plaintiff testified that she has to take breaks and sit down just to complete a load of dishes. (TR 419). Plaintiff takes breaks every ten to twenty minutes to put her feet up. (TR 418). She testified that she can stand and/or walk for fifteen minutes at a time or two and a half hours per day. (TR 422). Each day, Plaintiff drives her children six blocks to school, returns home and engages in activity for thirty minutes, then lies down until the children return home. Plaintiff assists them with their homework and encourages them to do their chores. Plaintiff starts making dinner and her daughter finishes it. (TR 429). Plaintiff takes a nap, gets up around seven o'clock p.m. and does a load of laundry or a similar task and goes to bed for the night. (TR 430).

Plaintiff testified that she was self-employed and performing "demonstrations" for a Home and Garden Party products company. (TR 400). Plaintiff testified that she used a computer to keep orders for the products, tracked orders, submitted sales tax to the state and ordered product from the company. (TR 402-03). Plaintiff testified that she had not worked at an in-home party since 2006 because she has not been well enough to carry her items, but that the year of the most recent administrative hearing, she entered three book party orders on the computer. (TR 404). Plaintiff goes to the public library to use its internet access to place the orders. (TR 430). Plaintiff testified that her sales area was anywhere from West Branch to Detroit, Michigan and when she was doing

3

home parties, she staged three or four parties per month.  (TR 405, 410).  A party lasts from one and a half to three hours.  (TR 412).

**B.     Medical and Record Evidence**

Nikolai Kinachtchouk, M.D., treated Plaintiff from July 5, 2000 until May 17, 2001.  (TR 71-79).  Plaintiff initially presented with complaints of generalized muscle aches and headaches. (TR 77).  On May 17, 2001 Dr. Kinachtchouk noted that rheumatologist Syed W. Rizvi, M.D., had confirmed a diagnosis of fibromyalgia and prescribed Elavil.  (TR 71).  Dr. Rizvi reported that Plaintiff had "typical symptoms of fibromyalgia that include body ache, sleeping pattern disturbance, feeling tired and positive tender points" and referred Plaintiff for physical therapy.  (TR 80).  Dr. Kinachtchouk diagnosed hypertriglyceridemia, with Plaintiff to continue on Tricor, fibromyalgia slightly better with Elavil and a history of allergic rhinitis with Plaintiff to continue on Allegra.  (TR 71).  The doctor advised Plaintiff to continue her current regime and exercise program to address the fibromyalgia.  (TR 71).  The record also shows that Plaintiff had a history of severe pancreatitis in 1994 with surgery, nephrolithiasis and status post stone removal, surgery on varicose veins and severe obesity, for which she was counseled regarding lifestyle modification and diet.  (TR 77-78, 81).

Plaintiff began treating with Tracy R. McComb, M.D., on November 29, 2001.  (TR 81-83). Dr. McComb noted swelling of the left lower extremity with a slightly purplish cast to parts of it and an antalgic gait.  (TR 83).  Plaintiff's medications were listed as Darvocet, Advil, Aleve, Tylenol Extra Strength, Allegra D or Allegra, Tricor, Elavil and Flexeril.  (TR 82).  Plaintiff reported that the Elavil kept her awake and the doctor advised her to take it in the morning.  (TR 83).  The doctor noted that given Plaintiff's snoring and weight, she probably had an element of sleep apnea contributing to her fatigue.  (TR 83).  In February 2002 the doctor noted that Plaintiff's left lower

4

extremity was tender to palpation and exhibited swelling. (TR 91). On February 7, 2002 Plaintiff reported yellow skin and that she was worried that she was getting a recurrence of pancreatitis. (TR 94). The doctor noted no yellowish color to Plaintiff's skin. (TR 95). The doctor recommended back exercises for Plaintiff's low back pain. (TR 95).

On February 14, 2002 the doctor noted that Plaintiff reported having had a headache for the prior six days with photophobia and phonophobia. (TR 92). The doctor noted Plaintiff's report that the headaches get "severe" before she starts her period or engages in strenuous activity. (TR 92). In May 2002 the doctor again noted that Plaintiff reported migraines and in July 2002 the doctor noted severe swelling and prescribed Niacin. (TR 85).

Dr. McComb completed a Medical Assessment of Ability To Do Work-Related Activities dated July 24, 2002 and concluded that Plaintiff had the ability to lift and/or carry fifteen to twenty pounds, stand and/or walk a total of four hours of an eight-hour workday including one hour without interruption, sit for a total of four hours including one hour without interruption, may only occasionally climb or balance, may never stoop, crouch, kneel or crawl, may engage in no pushing/pulling or bending and only occasional reaching, and is restricted from working around moving machinery. (TR 96-97). The doctor opined that Plaintiff's pain or discomfort would affect her ability to concentrate or sustain activity over a prolonged period, she would need rest breaks during an eight-hour day, even at the sedentary level of work, and that she is disabled from full-time work but "might be able to do light part-time work." (TR 98). On August 21, 2002 Dr. McComb completed a prescription form which states that Plaintiff "should be able to work for a maximum total of 4 hours a day, whether this is standing, walking, or sitting, with quite frequent breaks" and further wrote that "[t]here is nowhere on the form to specify this." (TR 99). The doctor completed a more restrictive Medical Assessment on September 24, 2007, which is set forth in detail in the

5

analysis below.  (TR 325-27).

Plaintiff treated at Huron Behavioral Health from June 2002 to August 2002.  (TR 100-07).

At intake assessment, Plaintiff was interviewed by Nancy Spencer, M.A., L.L.P.  (TR 107).  It was

noted that Plaintiff presented with depression and reported that she felt sad, cried easily, had a poor

appetite, slept a lot and was isolated.  (TR 106).  Plaintiff reported having tried three different anti-

depressants, but they interacted with her pancreatitis.  (TR 106).  Ms. Spencer diagnosed Plaintiff

with major depressive disorder, moderate (code 296.22).  (TR 107).  On September 6, 2002 Ms.

Spencer completed a mental Medical Assessment of Ability To Do Work-Related Activities.  (TR

122-24).  She concluded that Plaintiff was "not significantly limited" in most areas, yet was

moderately limited in "the ability to remember locations and work-like procedures" (within

"understanding and memory") and  "the ability to perform activities within a schedule, maintain

regular attendance, and be punctual within customary tolerances" (within "sustained concentration

and persistence").  (TR 122-23).  She concluded that Plaintiff was markedly limited in the "ability

to complete a normal workday and work week without interruption from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods."  (TR 123).  Ms. Spencer did not list a diagnosis on which she based the findings."  (TR

124).

Plaintiff's record contains Urgent Care treatment records from August 12, 2002 through

November 2007, which include notes of swelling in the lower left extremity, reports of being "very

tired" during the day, attempts to control cholesterol and tender trigger points in the extremities.

(Docket no. 127-63, 290-91, 293-96, 302-03, 308-09).  On April 11, 2003 the treatment provided

noted Plaintiff's report that she was trying to walk more, hangs up laundry and does her stretches.

(TR 137).  In July 2003 the treatment provider noted that Plaintiff reported taking a twenty-minute

walk each night.  (TR 135).  Plaintiff's strength was noted at a 5/5 in September 2004 and was not addressed again and was not noted as either "normal" or "abnormal".  (TR 128).  On November 10, 2007 Plaintiff reported to Urgent Care seeking a referral for a dermatologist and reporting that her sister had been diagnosed with melanoma.  (TR 308).  Plaintiff's skin was examined and moles and a skin tag were noted.  (TR 309).  Plaintiff also reported a stomach ache and ear ache and reported that Claritin-D had helped her allergies, but that they were still "bad."  (TR 308).

Plaintiff underwent an evaluation of obstructive sleep apnea on December 19, 2005.  Jeffrey J. Streff, D.O., concluded that Plaintiff's nocturnal polysomnography was consistent with minimal REM sleep apnea, diagnosis code 780.53.  (TR 276).  The doctor also noted impressions of excessive daytime somnolence, which he "would also consider that the etiology of this (sic) as depression," hypertension, depression and obesity.  (TR 276).  The doctor recommended to add a nasal steroid and consider a non-sedating anti-histamine, noting that weight loss would be of benefit. (TR 277).  In 2006 Plaintiff treated with George A. Carty, M.D., for her complaints of varicose veins and reports of pain, heaviness, achiness and swelling of the right lower extremity.  (TR 278-89, 286).  A March 2006 ultrasound of the lower extremities revealed findings consistent with extensive left superficial venous reflux to mid-calf and evidence of superficial venous reflux of the right lower extremity confined to the proximal thigh.  (TR 189).  On April 17, 2006 Dr. Carty performed a laser-assisted greater saphenous vein endoablation and stab phlebectomy (more than twenty incisions) of the left lower extremity.  (TR 283).  On April 25, 2006 Dr. Carty noted that Plaintiff reported significant discomfort in the medial aspect of the left thigh which appeared to be "related to her significant increase in her level of activities."  (TR 278).  The doctor noted no extremity swelling, some tenderness to deep palpation, but no areas of induration, no apparent hematoma, the incisions were healing well and bruising was fading.  (TR 278).  The doctor

recommended thigh-high elastic support stockings, frequent periods of leg elevation and application of moist heat to the affected area. (TR 278). No return visit was scheduled. (TR 278).

On September 29, 2006 Dr. McComb noted that Plaintiff was "bad" since the weather change, but was walking 3 ½ to 4 miles and had lost four inches in her waist, trigger points were tender and there had been some improvement in the varicose veins since her surgery. (TR 318-19). In October 2006 Plaintiff again treated with rheumatologist Dr. Rizvi who reported 18/18 tender points and advised that Plaintiff would resume Desyrel and continue Effexor and stretching exercises for her fibromyalgia, continue Gemfibrozil for hyperlipidemia, Nasonex for sleep apnea, Claritin for allergies and Imitrex for migraine headaches. (TR 317).

Plaintiff has a history of high triglycerides: On February 24, 2003 Plaintiff's triglycerides were 2010 H, on September 23, 2004 they were 669 H and on March 31, 2006 they were 2936 H. (TR 153, 155, 292). On September 24, 2007 Dr. McCombs reported that Plaintiff's triglycerides had gone from 2300 to 1415 H and noted swelling of the extremities. (TR 306-07, 310).

## C.     Vocational Expert Testimony

The ALJ asked the Vocational Expert (VE) a hypothetical question which the Court will summarize herein. The ALJ asked the VE to consider an individual with the ability to perform a limited range of sedentary work including the ability to lift and/or carry no more than five pounds occasionally or frequently during an eight-hour workday, stand and/or walk for two hours, sit for six hours in an eight-hour workday, requires a sit/stand option at will, can perform no kneeling or crawling, no frequent bending from the waist or knees and no reaching above shoulder level with both upper extremities, can have no exposure to extremes of cold, heat, wetness and/or humidity, no exposure to unprotected areas of moving machinery, heights, ramps, ladders, scaffolding and ground-level unprotected holes and pits, and has the ability to engage in unskilled work activity that

8

does not require exposure to high levels of stress, such as working with the general public or maintaining an assembly line production rate pace.  (TR 439-41).  The VE testified that such an individual could perform jobs such as surveillance system monitor (approximately 1,000 jobs in the region defined as southeast Michigan and 100,000 nationally), inspecting, checking and sorting (1,000 jobs regionally and 100,000 nationally) and simple assembly (2,000 jobs regionally and 200,000 nationally).  (TR 445-47).  The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles (DOT) except that the DOT does not address the sit/stand option.  (TR 448-49).  The VE also testified that if the individual were not able to sustain activity for eight hours a day, five days a week, or needed three to four unscheduled rest breaks per day, these jobs would be precluded.  (TR 451).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since May 17, 2001, the alleged onset date, met the insured status requirements of the Social Security Act through December 31, 2005 and suffered from fibromyalgia, varicose veins in the left lower extremity and chronic headaches, she did not have an impairment or combination of impairments that meets or medically equals the Listing of Impairments.  (TR 19-20, 438).  The ALJ found that Plaintiff was not entirely credible and she retains the ability to perform a limited range of work at the sedentary level.  (TR 22).  The ALJ concluded that there are jobs that exist in a significant number in the national economy that Plaintiff can perform.  (TR 26-27).

## V.     LAW AND ANALYSIS

### A.     Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether

his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Analysis

### 1.     *Scope of the Court's Review*

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     she was not presently engaged in substantial gainful employment; and

(2)     she suffered from a severe impairment; and

10

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (2009).  If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  *See id.* §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

Plaintiff raises two arguments on appeal.  First, Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinions of a treating physician and treating counselor and second, that the administrative hearing did not "comply with the terms and requirements" of the Social Security Act.  (Docket nos. 14, 18).

**2.      *Whether Substantial Evidence Supports the ALJ's Findings With Respect to Dr. McComb's and Psychologist Spencer's Opinions and Restrictions***

Plaintiff argues that the ALJ failed to give controlling weight to the opinions of Dr. McComb and psychologist Spencer regarding Plaintiff's restrictions and disability status.  (Docket no. 14). It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference.  Under 20 C.F.R. sections 404.1527(d)(2) and 416.927(d)(2), the ALJ must

11

give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. The ALJ must give specific reasons for the weight given to a treating source's opinion. SSR 96-2p. Whether a medical opinion is "not consistent" with other substantial evidence is not limited to a comparison with other medical opinions, but considers all evidence of record, for example, statements by other individuals about the claimant's actual activities. *See* 96-2p, 1996 WL 374188 at *3.

   To the extent that Plaintiff argues that the ALJ improperly discounted Dr. McComb's opinions, the ALJ has concluded that Plaintiff suffers from the severe impairment of fibromyalgia and varicose veins and chronic headaches[1] and has otherwise considered Dr. McComb's medical records, treatment notes and opinions. (TR 20, Docket no. 14 at p. 10 of 23). Plaintiff's argument goes to the issue of whether the ALJ should have adopted Dr. McComb's opinion regarding Plaintiff's limitations. The ALJ pointed out areas where the doctor's opinions regarding Plaintiff's limitations were not supported by medically acceptable clinical and laboratory diagnostic techniques or were inconsistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

   The ALJ found that Plaintiff has the RFC to perform a limited range of unskilled sedentary[2]

---

[1]The Court notes that Plaintiff makes no argument that the ALJ failed to find that she suffered from any other impairments or diagnoses or otherwise erred at steps two or three. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (2009).

[2] Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.R.F. §§

work that does not require exposure to high levels of stress such as working with the general public or an assembly line production-rate pace requirement and requires lifting no more than five pounds, able to stand and/or walk for up to two hours and sit for upward of six hours in a normal eight-hour day with a sit/stand option at will, no frequent bending from the waist or knees, no reaching above shoulder level with both extremities, no extremes of heat, cold, wetness and/or humidity, and no working in unprotected areas of moving machinery, heights, ramps, ladders, scaffolding, of ground level holes and pits.  (TR 22).

Dr. McComb's most recent opinion regarding Plaintiff's limitations was more restrictive than the ALJ's with respect to sitting and less restrictive than the ALJ's with respect to lifting and carrying.  On September 24, 2007  Dr. McComb completed a Medical Assessment Of Ability To Do Work-Related Activities and concluded that Plaintiff can sit for four to six hours and stand and/or walk for two hours of an eight-hour workday, needs to "get up" and move around "periodically," can lift and/or carry five to ten pounds, can never climb, balance, crouch, kneel or crawl and may only occasionally stoop, is restricted in reaching, pushing/pulling and bending and is restricted in ability to be around heights, moving machinery, chemicals, dust and fumes but is not restricted in ability to be around temperature extremes, noise and humidity.  (TR 325-26).  The doctor opined that pain and discomfort and Plaintiff's medication would affect her ability to concentrate or sustain activity over a prolonged period and that she would need to take breaks to rest her muscles and move her legs.  The doctor answered "yes" to a final questions whether Plaintiff was totally disabled from all full-time work.  (TR 327).

Dispositive administrative findings relating to the determination of a disability and Plaintiff's

404.1567(a), 416.967(a).

13

RFC are issues reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).  The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability."  *Maple v. Commissioner of Social Security*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 404.1527(e).  The ALJ did not err in failing to adopt Dr. McComb's conclusory answer that Plaintiff is disabled.

With respect to the remainder of Dr. McComb's opinions, and contrary to Plaintiff's assertions, the ALJ fully considered them and specifically explained his rationale to the extent that he did not adopt the doctor's finding of disability and some of Plaintiff's limitations.  "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole."  *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

As set forth above, the ALJ's RFC with respect to lifting and/or carrying is more restrictive than Dr. McComb's opinion and the ALJ's finding that Plaintiff could sit for at least six hours is not completely inconsistent with Dr. McComb's opinion that Plaintiff could sit for only four to six hours.  Dr. McComb also found that pain, medication and discomfort affect Plaintiff's ability to concentrate or sustain activity.  (TR 22, 325).   As the ALJ pointed out, although Dr. McComb's referenced some findings with her statements about Plaintiff's limitations, the findings cited did not support the extensive limitations.  (TR 25).  For example, with respect to the sitting limitation, the doctor noted that Plaintiff had "to get up [and] move periodically" and the medical findings to support the assertion are "has to move muscles."  (TR 325).  There is simply nothing in the record to support the sole statement that Plaintiff can only sit for four to six hours and no notations, either subjective or objective, supporting the allegation of medication side effects which affect concentration.  *See Hogan*, 239 F.3d at 961 (The ALJ noted that none of the restrictions in the treating physician's source statement appear elsewhere in the record.  The ALJ did not err in

14

discounting unsupported and inconsistent opinions of the treating physician's medical source statement.).

Dr. McComb indicated in both the 2002 and 2007 medical assessment forms that Plaintiff would need "rest breaks" and would therefore be unable to perform sustained activities at a sedentary exertional level over an 8-hour workday. (TR 98). As an initial matter, the doctor wrote in the response on a form question and indicated that Plaintiff would need "rest breaks", not that she would need to lay down, as Plaintiff alleges in her brief. (TR 98, 121, Docket no. 14 at p. 10 of 23). Plaintiff also references Dr. McComb's December 8, 2005 examination notes and alleging that Dr. McComb had opined that Plaintiff's "excessive daytimes sleepiness was from her depression and recommended treatment." (Docket no. 14 at p. 12 of 23). This opinion does not appear on the transcript page 305 and date referenced by Plaintiff. (TR 305).

The need to "get up and move" identified by Dr. McComb in the sitting limitation is addressed by the ALJ's RFC which requires that Plaintiff be able to alternate sitting and standing at will. The Court also notes that the latest treatment notes from Dr. McComb are dated September 2007 and even at that late date, there was simply no indication in the notes that Plaintiff had severe limitations. In February 2007 the doctor noted that Plaintiff walks 4 ½ miles when it is nice outside, and that she had bloating, migraines with her menses and continued to have swelling of the lower left extremity. (TR 315-16). Despite Plaintiff's arguments that Dr. McComb's records from 2005 showed trigger points with tenderness, including 8 positive trigger points on February 15, 2005, the same form was used in February 2007 and on September 24, 2007 and no trigger points were noted. (TR 294). On September 24, 2007 the doctor noted swelling in the extremities and that Plaintiff was taking walks and performing her stretches. (TR 306).

The ALJ also points out that while Dr. McComb's findings in her first Medical Assessment

15

in 2002 conclude that Plaintiff *might* be able to do "light" part-time work, that statement does not address the sedentary level of exertion, which the ALJ found Plaintiff could perform. (TR 24, 331). Despite Plaintiff's argument that Dr. McComb's findings are consistent with the other physicians of record, Defendant correctly points out that no other physician opined regarding Plaintiff's physical ability to work. As late as October 2006 Dr. Rizvi, a rheumotology specialist who examined Plaintiff more than once related to her fibromyalgia, did not note any limitations. (TR 317). In October 2006, Dr. Rizvi noted that Plaintiff's review of systems and physical examination remained unchanged. (TR 317). Dr. Rizvi's prior examination had been on May 17, 2001, prior to Dr. McComb's first medical assessment statement on July 24, 2002. (TR 80, 329-31). The ALJ properly explained the weight given to Dr. McComb's opinions in the Medical Assessments and the ALJ's findings with respect to the weight given to Dr. McComb's opinions is supported by substantial evidence. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Plaintiff also argues that the ALJ erred in failing to adopt the opinion of psychologist Nancy Spencer, M.A., L.L.P., that Plaintiff is "markedly limited" in the ability to complete a normal workday and work week without interruption from psychologically based symptoms, and that she is moderately limited in the ability to perform activities within a schedule, maintain regular attendance and be punctual and ability to remember locations and work-like procedures. (TR 122-23). The ALJ specifically referenced these findings and the lack of support for them and the contradiction by Plaintiff's testimony of her own activities. (TR 25).

The ALJ correctly pointed out that Plaintiff's participation in her self-employment business shows that she has the ability to organize, which is supported by Plaintiff's testimony. (TR 25, 401). The ALJ also pointed out that when Plaintiff engaged in self-employment from 2002-2006, although not rising to the level of substantial gainful employment, the activities included attending

16

demonstrations at various locations three to four times per month, recruiting others, making personal contacts or internet solicitations, and making verbal presentations at house parties. (TR 20). Ms. Spencer's mental Medical Assessment was completed in 2002, well before Plaintiff stopped doing the demonstration parties in 2006, again supported by Plaintiff's testimony. (TR 404). Plaintiff also testified that she was able to use a computer to keep track of her activities and the computer she used to access the internet and fill her orders was not in her home, but was located at the local library. (TR 21, 430).

The ALJ correctly points out that the therapist's statements are not supported by findings. The therapist has not identified the diagnosis underlying her findings on the Medical Assessment. (TR 124). At the initial intake, the therapist diagnosed major depressive disorder, moderate. (TR 106). This appears to be primarily based on Plaintiff's subjective report and although the record contains treatment notes for four visits spanning two months, there is no evidence of psychological testing or a specific identification of Plaintiff's anti-depressive medication. (TR 100-107). During the therapy sessions, Plaintiff discussed her health, her frustration with her inability to work, and her deteriorating relationship with her husband. (TR 100-104). Each time the therapist noted that her intervention was to allow Plaintiff "to vent" and to validate her feelings. The ALJ is correct that there is simply no support for the moderate and marked limitations in these three discrete areas, assigned by Ms. Spencer's assessment.

As the ALJ pointed out, Plaintiff sought no further treatment for her mental health following the short period in 2002 when she was counseled by Ms. Spencer. (TR 420). Despite Plaintiff's testimony that she has tried three different anti-depressants, neither Plaintiff in her brief, nor the mental health treatment provider has identified these medications. On May 6, 2002 Dr. McComb noted that Plaintiff "wants to wait on trying e.g. Effexor or Paxil for now." (TR 87). For all of these

17

reasons, the ALJ's findings with respect to Ms. Spencer's assessment are supported by substantial evidence.

**3.**     ***Plaintiff's Argument that the Administrative Proceedings Did Not Comply With The Social Security Act***

Plaintiff also argues that the Administrative Hearing before the ALJ "did not . . . comply with the terms and requirements" of the Social Security Act.  Plaintiff's entire argument on this issue cites only one legal authority, for the proposition that the "ALJ is required to be an independent fact finer (sic) who must fully and fairly develop the administrative record."  (Docket no. 14 at p. 16 of 23 citing *Johnson v. Sec'y of Health and Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986)).  Although *Johnson* stands for the premise stated, Plaintiff makes no specific allegation  regarding areas in which the ALJ failed to develop the record at the hearing.  Plaintiff argues generally that "[r]ather than fully obtain the testimony of [Plaintiff], however, at times during the hearing, ALJ Gramenos appeared more intent on engaging in a confrontation with [Plaintiff] and the undersigned over simple and often of little relevance issues."  (Docket no. 14).  Plaintiff then went on to cite excerpts from the hearing text, including one excerpt where Plaintiff alleges that the ALJ "attacked her weight" and another where the ALJ asked Plaintiff's counsel how long he had been practicing law.  (Docket no. 14).  Defendant pointed out that it appears that Plaintiff is alleging "bias" by the ALJ.  Plaintiff clarified this point in her Reply brief by alleging that the ALJ's "intolerance and hostility" to Plaintiff and her counsel carried over into the ALJ's analysis.  (Docket no. 18).   An examination of the record indicates that Plaintiff's claim of bias is not properly before the Court and, in any event, there is substantial evidence in the record to support the Commissioner's denial of benefits.

"The Social Security Act gives those claiming disability benefits a right to a hearing in which

18

witnesses may testify and evidence may be received." *Ventura v. Halala*, 55 F.3d 900, 902 (3d Cir. 1995). "Although the hearing is informal in nature, due process requires that any hearing afforded claimant be full and fair." *Id.*

> The regulations provide that
>
> An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity. . . . If the administrative law judge does not withdraw, you may, after the hearing, present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge.

20 C.F.R. §§ 404.940, 416.1440; *see also Ventura*, 55 F.3d at 902 ("The claimant must bring any objections to the attention of the ALJ and the ALJ shall decide whether to continue the hearing or withdraw.").

The regulations require that the issue of bias be raised at the "earliest opportunity." 20 C.F.R. §§ 404.940, 416.1440; *see also Pronto v. Barnhart*, 339 F. Supp. 2d 480, 495 (W.D.N.Y. 2004) (The *Pronto* parties alleged general bias and did not have all of the evidence necessary to raise the bias issue prior to the appeals council and district court reviews. Therefore, the court found that plaintiffs raised the issue at the earliest opportunity.). Plaintiff did not allege bias relating to her own claim and the questioning and statements by the ALJ at Plaintiff's hearing. A review of the transcript shows that neither Plaintiff nor her attorney objected to the ALJ's actions during the hearing.

There is no evidence or allegation that Plaintiff raised the issue of bias to the Appeals Council. Plaintiff in her Brief in Support of Appeal dated September 18, 2008, raised the issue of the ALJ's demeanor in only the final paragraph of her brief, unaccompanied by legal authority or allegations of bias or partiality. In fact, Plaintiff's description of the hearing, as it appears in her

Appeals Brief, paints the ALJ as equally cantankerous to Plaintiff, Plaintiff's counsel, the hearing clerk and the temperature in the room. (TR 380). Despite Plaintiff's description in her Appeals Brief, nowhere does she ask the Appeals Council for relief on this basis. Plaintiff concluded the Appeals Brief by stating that "It seems nothing including the temperature of the room and the ability of the previous ALJ escaped the wrath of [the ALJ]. Perhaps if [he] had spent more time reviewing the medical records . . . a more informed decision based on the medical record would have been made."[3] (TR 380). Plaintiff's Appeals Brief contains no plea for relief, implicit or direct, based on the ALJ's conduct at the hearing.

Plaintiff's allegations of bias rely on no evidence outside of the November 27, 2007 hearing transcript, therefore the earliest opportunity for Plaintiff to object would have been during that hearing. The next opportunity would have been during Plaintiff's appeal. For these reasons, the Court should find that Plaintiff failed to exhaust her administrative remedies with respect to this issue. Therefore, the Court is precluded from reviewing the issue of the ALJ's bias[4].

_____

[3] The ALJ's additional complaint about the multiple duplicates in Plaintiff's file is not without merit. There are documents appearing in duplicate and triplicate in the file. (TR 81-83, 116-18, and 96-98, 119-21, 329-31). The inclusion of duplicate sets of records does nothing to aid either the ALJ or this Court in an efficient review of these matters.

[4] The Court notes that a review of the transcript shows that the ALJ takes an equal opportunity approach to digressions of all manner (including the temperature in the hearing room, his own health problems, his staffing challenges, the fairness of the rotational system used to assign vocational experts and the type of wrist watch and/or timekeeping device used by himself and counsel) none of which rise to the level of revealing bias against Plaintiff. (TR 434-35, 438-39). The transcript shows that the ALJ gave Plaintiff an opportunity to develop her claim in full. At the end of the hearing the ALJ advised that he was going to have the file "put together" including removing duplicates, and would notify Plaintiff's counsel when that task was complete, giving counsel the opportunity to request a supplemental hearing due to the change in exhibit pattern of the file. (TR 455) The ALJ also gave Plaintiff the opportunity to provide the Court with a copy of a relevant tax return following the hearing and allowed Plaintiff a full opportunity to testify about issues related to her medical conditions and past employment and earnings. (TR 409).

## VI.    CONCLUSION

The ALJ's opinion is supported by substantial evidence and there is insufficient evidence in the record for the Court to find otherwise.  Defendant's Motion for Summary Judgment (docket no. 17) should be GRANTED, that of Plaintiff (docket no. 14) DENIED and the instant complaint dismissed.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 20, 2010        s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 20, 2010       s/ Lisa C. Bartlett
                                   Case Manager